WEBB, *Administrator, Appellant,* v. DARBY *et al.*

1. **Fraud:** EVIDENCE. Where on a charge of fraud, the evidence is as consistent with honesty as with dishonesty, it will be construed in favor of the former.

2. ——— : ———. Where in such case, doubt exists as to the construction to be given to the conduct of the parties, they should be resolved in favor of the defendant.

*Appeal from Jackson Circuit Court.*—HON. T. A. GILL, Judge.

AFFIRMED.

*A. Comingo, G. W. Buchanan* and *Gates & Wallace* for appellant.

(1) A conveyance made with intent to either hinder, delay, or defraud creditors, or a particular creditor, to one having notice of such intention, is void, irrespective of the solvency of the grantor or the value of the consideration. Nor is actual knowledge on the part of the grantee necessary. Knowledge of facts sufficient to put a prudent man on inquiry is sufficient. R. S., sec. 2497; Bump on Fraud. Con. [3 Ed.] 200-1; *Burgert v.*

*Borchert*, 59 Mo. 83 ; *Daugherty v. Cooper*, 77 Mo. 529 ; *Rupe v. Alkire*, 77 Mo. 642 ; *Johnson v. Sullivan*, 23 Mo. 474. (2) A voluntary conveyance made by one who is insolvent or in failing circumstances, or whose estate is disproportioned to the amount conveyed, is void as to existing creditors, regardless of the intention of the parties to it. *Hurley v. Taylor*, 78 Mo. 238 ; *Sloan v. Torry*, 78 Mo. 623 ; *White v. McPheeters*, 75 Mo. 286 ; *Potter v. McDowell*, 31 Mo. 62. (3) A promise by the grantee to pay debts of the grantor which are secured on the property is not a valuable consideration unless he also agrees to protect the debtor and the rest of his property from them ; or, if the value of property exceeds the amount of the incumbrances, a promise to pay off the incumbrances is not a valuable consideration, and the conveyance is voluntary. Bump on Fraud. Con. [3 Ed.] 228 ; *United States v. Mentz*, 2 Watts, 406 ; *Carpenter v. Carpenter*, 25 N. J. Eq. 194 ; *Bank v. Beatschy*, 52 Wis. 438. (4) Fraud is seldom capable of direct proof, but may be gathered from surrounding circumstances indicative of an intention to hinder, delay, or defraud creditors. *Burgert v. Borchert, supra ; Frederick v. Allgaier*, 88 Mo. 598. (5) Insolvency or pecuniary embarrassment of the debtor furnishes a strong motive for a fraudulent transfer, and is a badge or mark of fraud. Bump on Fraud. Con. [3 Ed.] 36 ; *Glenn v. Glenn*, 17 Iowa, 498 ; *Sheppard v. Iveson*, 12 Ala. 97 ; *Merrill v. Locke*, 41 N. H. 490 ; *Sayer v. Fredericks*, 25 N. J. Eq. 207 ; *Forsyth v. Mathews*, 14 Pa. St. 104. (6) A transfer by a debtor of all of his property which is subject to execution is a badge of fraud. Bump on Fraud. Con. [3 Ed.] 34 ; *Twyne's case*, 3 Coke, 80 ; *Glenn v. Glenn*, 17 Iowa, 498 ; *Vandall v. Vandall*, 13 Iowa, 247 ; *Adams v. Sater*, 19 Ind. 418 ; *Searle v. Arnold*, 7 R. I. 582 ; *Wheelden v. Wilson*, 44 Me. 20 ; *Tub v. Williams*, 7 Humph. 370. (7) If the conveyance is made pending or in expectation of a suit, it is a mark

Webb v. Darby.

and sign of fraud. Bump on Fraud. Con. [3 Ed.] 37;
*Twyne's case*, 3 Coke, 80; *Hawthorne v. Eames*, 31 Me.
93; *Glenn v. Glenn*, 17 Iowa, 498; *Adams v. Sater*, 19
Ind. 418; *Sayer v. Fredericks*, 16 N. J. Eq. 207; *Stewart v. Wilson*, 42 Pa. St. 104; *Merrill v. Locke*, 41 N.
H. 490. (8) Inadequacy of consideration raises a violent presumption of fraud. Bump on Fraud. Con.
[3 Ed.] 44; *Shelton v. Church*, 38 Conn. 416; *Rhoods
v. Blatt*, 84 Pa. St. 31; *Davidson v. Little*, 22 Pa. St.
252; *Robinson v. Robards*, 15 Mo. 319; *Curd v. Lackland*, 49 Mo. 451. (9) It is an object of suspicion and
badge of fraud if the conveyance is from father to son,
and especially when residing together. *Berland v.
Walker*, 7 Ala. 274; *Thompson v. Feagin*, 60 Ga. 82;
*Hawkins v. Alston*, 4 Ired. Eq. 146; *Hawthorne v.
Eames*, 31 Me. 93; *Glenn v. Glenn*, 17 Iowa, 498; *Leavitt
v. LaForce*, 71 Mo. 354; *Vandall v. Vandall*, 13 Ia.
247; *Searle v. Arnold*, 7 R. I. 582; Bump on Fraud.
Con. [3 Ed.] 56; *Trefts v. King*, 18 Pa. St. 157.
(10) Omission to place the deed on record until after the
judgment is a badge of fraud. Bump on Fraud. Con.
[3 Ed.] 39; *Goldsby v. Johnson*, 82 Mo. 606; *Hood v.
Brown*, 2 Ohio, 269; *Thompson v. Feagin*, 60 Ga. 82;
*Coates v. Gerloch*, 44 Pa. St. 46. (11) Failure to state
the true character and consideration of the transaction
in the deed is a mark of fraud. Bump on Fraud. Con.
[3 Ed.] 41; *McKinster v. Babcock*, 26 N. Y. 382; *Ingles
v. Donalson*, 2 Hayn. [N. C.] 57; *Divver v. McLaughlin*, 2 Wend. 600; *Pickett v. Pipkin*, 64 Ala. 525–6;
*Summers v. Howland*, 2 Baxter, 412. (12) The irresponsibility and youth of the purchaser is a badge of
fraud where the sale is on credit and no security is taken.
*Glenn v. Glenn*, 17 Iowa, 498; *Chappell v. Clapp*, 29
Iowa, 194. (13) Where no change of possession follows
the conveyance it is a badge of fraud. Bump on Fraud.
Con. [3 Ed.] 49; *Chappell v. Clapp*, 29 Iowa, 194; *Merrill v. Locke*, 41 N. H. 489; *Gibson v. Hill*, 23 Tex. 77.

*John A. Sea* and *G. W. Staley* for respondents.

(1) Fraud will never be imputed when the circumstances and facts of the transaction assailed as fraudulent, may, as a whole, with any reasonableness, consist with honesty and purity of intention. Courts act upon the principle that though the facts of the transaction might admit of a different construction, nevertheless. where doubts are entertained as to the true construction to be given as to the conduct of the parties in the transaction assailed, these doubts should be resolved in favor of the defendant. Bump on Fraud. Con. [3 Ed.], 603; *Dallam v. Renshaw*, 26 Mo. 533; *Rumbolds v. Parr*, 51 Mo. 592; *Page v. Dixon*, 59 Mo. 43; *Chapman v. McIlwrath*, 77 Mo. 38; *Forrester v. Scoville*, 51 Mo. 268. (2) While the verdict of a jury, or the finding of a chancellor, on questions of fraud is not conclusive, nevertheless it will not be disturbed by the Supreme Court, on the ground of fraud shown, unless the facts are entirely irreconcilable with the hypothesis of honesty and good faith. The findings of the chancellor in such cases will be deferred to unless he has manifestly disregarded the evidence; and this, because the chancellor, having them before him, is the best judge of the credibility of the witnesses, and when the evidence is very conflicting, the Supreme Court will defer to the finding of the trial court and will affirm the judgment. *Page v. Dixon*, 59 Mo. 43; *Snell v. Harrison*, 83 Mo. 652; *Erskine v. Lowenstein*, 82 Mo. 301; *Dryden v. Bank*, 15 Mo. App. 580; *Barbette v. City of Edina*, 19 Mo. App. 550; *Renney v. Williams*, 89 Mo. 139. (3) Relationship between parties to a conveyance is not sufficient to establish a fraudulent intent as to creditors, nor is the insolvency of the grantor. *Renney v. Williams*, 89 Mo. 139. (4) The value of a thing is what it will bring and admits of no precise standard. It must be in its.

nature fluctuating, dependent in various circumstances. Hence to justify an inference of fraud, from inadequacy of price, the consideration must be so clearly below the market value, as to strike the understanding at once, with the conviction that such sale could never have been made in good faith. Bump on Fraud. Con. [3 Ed.] 45. (5) Courts take a practical view of all matters. The conveyance of the equity of redemption in premises so covered by incumbrances that the equity of redemption is valueless, will not, in the absence of actual fraud, be set aside at the suit of a creditor. *Mittelburg v. Harrison*, 11 Mo. App. 136, 142; s. c., 90 Mo. 444. (6) Where a party has a claim and allows another party to expend his money, or waits until the property has largely increased in value, either from these expenditures or other causes, courts of equity are, very reluctant to interfere, though there be no bar of the statute. *Moreman v. Talbot*, 55 Mo. 392; *Henshaw v. Bissell*, 18 Wall. [U. S.] 255. And courts of equity will deny aid. to those who have slept upon their rights for such a length of time, that it would be against good conscience and operate as a fraud to allow them to be asserted. *Bradshaw v. Yates*, 67 Mo. 221.

NORTON, C. J.—This is a proceeding instituted by plaintiff, Webb, as administrator of the estate of A. Philpot, deceased, to vacate and overrule, on the ground of fraud, a deed made by John Darby on the seventeenth of February, 1882, conveying to Samuel Darby, among other lands, the following : The east half of the southeast quarter of section 8, township 48, range 29. The circuit court rendered judgment for the defendants, from which the plaintiff has appealed and claims that the judgment is against the evidence.

It appears from the record that A. Philpot was one of the sureties on John Darby's administration bond,

and that, in a suit instituted thereon, in 1878, by Ruth Darby, she recovered judgment against plaintiff, Webb, as the administrator of said Philpot, for $4,675.10, which, as administrator, he paid ; that said John Darby, in 1878, gave said Webb a deed of trust on certain real and personal property to secure him in the payment of said debt ; that this deed of trust conveyed all of Darby's real estate except his homestead ; that the property thus conveyed was thereafter sold, and after applying the proceeds of sale to the payment of said debt there remained a balance, for the recovery of which plaintiff instituted suit, on the seventh of May, 1880, against said Darby, and on the sixth of March, 1882, obtained judgment against him for $1,637.50, on which execution issued, on the twenty-fifth of August, 1883, and under which the eighty acres of land in controversy were sold, as the property of said John Darby, to plaintiff, on the twenty-ninth of September, 1883, for two hundred and forty dollars, and this suit was begun on the twentieth of February, 1884.

The evidence tends to show satisfactorily that, in 1878, John Darby, after executing the deed of trust conveying his real and personal estate to secure plaintiff from liability on the judgment rendered against him as administrator, furnished him with money to pay off a prior encumbrance on the land ; that, when plaintiff, in 1879, caused said property so conveyed to be sold, said Darby gave up other personal property not included in said deed to be sold, which was sold and the proceeds applied on the debt. While the evidence shows that Darby was involved and in debt, it also shows that, after thus surrendering his property, he struggled to get out of debt and continued to pay to the extent of his ability, and that, as a means of enabling himself to pay, he believed that, by purchasing the land in controversy at a tax sale to be made on the twenty-seventh of December, 1880, he could make something by selling

cordwood from it. He testified that he conferred and advised with plaintiff about it, and informed him if he bought he would have to borrow the money to enable him to do so ; that he was advised to make the purchase ; that he borrowed the money, and bought it at said sale, encumbering it for the payment of the money borrowed ; that he found, in consequence of the drop in the price of cordwood about that time, that he could make nothing, offered various parties to let them have the land afterwards conveyed to his son, if they would assume to pay the encumbrances upon it, but no one accepted his offer. The fact that he was willing to dispose of it on these terms, and that the equity, which was all he had in the lands, was regarded as worthless, seems to have been notorious in the neighborhood where plaintiff lived. It appears that the encumbrances on the lands including the eighty acres in question amounted to twenty-one hundred and forty dollars, and that Darby, only having an equity which he had been unable to give away, finally agreed with his son, Samuel, that he would convey to him in consideration of his agreeing and assuming to pay the encumbrances on it and some other outside debts, and in pursuance thereof conveyed to said Samuel, by deed dated February 17, 1882, two hundred and forty acres, including the eighty in controversy, for the expressed consideration of twenty-one hundred and forty dollars, and also conveyed by deed, dated February 25, 1882, seventy other acres for the expressed consideration of fourteen hundred and twenty dollars.

The said Samuel, who is shown, by the evidence of all the witnesses, both on the part of plaintiff and defendants, to have been an energetic, industrious, upright young man, between twenty-two and twenty-three years of age, believing, as he states in his evidence, that, by hard work, he would be able to carry the burden, pay off the encumbrances and other outside debts, agreed to assume

the burden and take the land.   It is satisfactorily shown that he went to work, cut and hauled wood to Kansas City, and for some time dealt in buying and selling wood and coal in said city, and in this way made money which he applied to the payment of encumbrances on the land conveyed, and other debts assumed by him, and entirely extinguished the encumbrance on the eighty acres involved in this suit.   The only culpatory evidence is that of A. J. Webb, who stated that, before John Webb brought suit, John Darby asked witness : "If he and Austin had made arrangements· to keep John Webb from getting that money out of them, and said he never intended to pay another nickle."   This conversation occurred after Darby had surrendered his real and personal property to . Webb to pay the debt, and before Darby bought the land in question at the tax sale hereinbefore mentioned, of which purchase Webb was cognizant.

Another witness, one Parent, stated that in a conversation had in Kansas, with Samuel Darby, he said that when he came of age his father would turn his property over to him, and Mr. Webb would be left.   This is expressly denied by Samuel Darby, and if such conversation ever took place, which, to say the least, is improbable from the time, place, and circumstances under which it is alleged to have occurred, it must have been before John Darby owned the land in question, and soon after he had given up all he owned to secure plaintiff, except his homestead, and a small lot of goods of no considerable value.   It is evident that the circuit judge who saw and heard these witnesses did not, in view of the other evidence, attach any importance to it.

Two witnesses testified that the land was worth from fifteen to twenty dollars per acre ; three or four others that its value was ten dollars.   These opinions as to value were predicated upon the idea of a clear title, and there was a question as to whether Darby, in

Webb v. Darby.

virtue of his purchase at the tax sale, acquired full title to it, or only to one eighty, with the right to claim from his co-tenants, six or seven in number, their proportionate part of what he paid at the tax sale. The party holding the encumbrance on this eighty amounting to three hundred and fifty dollars, testified that he was glad to get his money out of it, and to do so gave up the interest, or half of it, on the principal debt.

In view of the facts above stated, and the further fact that no attempt was made by plaintiff to enforce his judgment against this land till after Samual Darby had paid off the encumbrances upon it, as he had agreed to do when he bought it in February, 1882, we have reached the same conclusion arrived at by the circuit judge who tried the cause. The burden of establishing fraud in the transaction which plaintiff impeaches in his petition was upon him, and this burden he has not discharged, and in reaching our conclusion, we have acted on the principle of giving defendants the benefit of a construction of the evidence favorable to the honesty of the transaction, as such construction as well consists with the honesty of the transaction as a contrary one, and that when doubts exist as to the construction to be given to the conduct of the parties, such doubts should be resolved in favor of defendants. *Dallam v. Renshaw*, 26 Mo. 544; *Page v. Dixon*, 59 Mo. 43; *Chapman v. McIlwrath*, 77 Mo. 38.

The judgment is affirmed, with the concurrence of the other judges, except Ray, J., absent.