GRIGSBY v. STAPLETON, *Appellant.*

Sale: LATENT DEFECT: CAVEAT EMPTOR. A vendor who sells cattle at a sound price, knowing that they have Texas fever, or any other disease affecting their value for the purposes for which they are being bought, the disease not being easily detected by those having had no experience with it, and who does not disclose such knowledge to the vendee, is guilty of the fraudulent concealment of a latent defect, for which he must answer. The rule *caveat emptor* does not apply in such case.

*Appeal from Nodaway Circuit Court.*—HON. H. S. KELLEY, Judge.

REVERSED AND REMANDED.

*Johnston & Craig* for appellant.

(1) The rule *caveat emptor* does not apply in this case. (*a*) Where a vendor sells property having a latent defect, materially affecting its value, of which he is aware, or has notice, and of which he knows the vendee is ignorant, and buying upon the supposition that no such defect exists, yet sells the property to such vendee, for the full value of the same without such defect and without disclosing such defect to him, such vendor is guilty of fraud and the fraud may be pleaded in an action for the price of the property. *Cecil, Adm'r, v. Spurger*, 32 Mo. 462, 463; *McAdams v. Oates*, 24 Mo.

223 ; *Barrow v. Alexander*, 27 Mo. 530 ; *Lockridge v. Foster*, 4 Scam. 564 ; *Wintz v. Morrison*, 17 Tex. 372 ; *Baker v. Seaburn*, 1 Swan, 54 ; *Bench v. Sheldon*, 14 Barb. 66 ; *Cardwell v. McClellan*, 3 Sneed, 150. (*b*) "The inference of fraud is easily and almost inevitably drawn when there is a suppression or concealment of material facts, and one of the contracting parties is knowingly suffered to deal under a delusion." 2 Kent's Com. (11 Ed.) side page 483. "Where a party misrepresents a material fact, or produces a false impression, by words or acts, in order to mislead or obtain an undue advantage, it is a case of manifest fraud." 2 Kent's Com. (11 Ed.) side page 384. (2) Knowingly to conceal a hidden or latent defect in goods when selling them at a sound price is a gross fraud. *Barrow v. Alexander*, 27 Mo. 530 ; *Wintz v. Morrison*, 17 Tex. 372 ; *Brown v. Montgomery*, 20 N. Y. 287. The facts show that the cattle were infected and dying with Texas or Spanish fever, a deadly disease ; and one not discernible by a person unacquainted with such disease.

*W. W. Ramsey* and *Edwards & Ellison* for respondent.

(1) The court committed no error in giving plaintiff's first instruction. There was no relation between the parties creating a special trust or confidence. The respondent was guilty of no misrepresentation, artifice, trick, or act, which in the slightest degree tended to prevent appellant from making full investigation and a thorough inspection. If the rule *caveat emptor* exists, it certainly must apply in such instances. Story on Sales (2 Ed.) sec. 174 ; 1 Parsons on Contracts (6 Ed.) *577, *578 ; *Cooper v. Newman*, 45 N. H. 339 ; 1 Story on Contracts (4 Ed.) secs. 516-517 ; *Otis v. Raymond*, 3 Conn. 413 ; *Van Arsdale v. Howard*, 5 Ala. 596 ; *Hobbs v. Parker*, 31 Me. 143 ; *Brown v. Leach*, 107

Mass. 364; *Rockafellow v. Baker*, 41 Pa. St. 319; *Beningin v. Corwin*, 24 N. J. Law, 257-264; *Mitchell v. McDougal*, 62 Ill. 498; *Kohl v. Lindley*, 39 Ill. 195; *Hess v. Young*, 59 Ind. 379; *Dooley v. Jinnings*, 6 Mo. 61. The rule of the civil law is, "that a sound price is understood to warrant a sound article." Co. Lit. 102; 2 Black. Comm. 451. But the rule of the common law is different. It very reasonably requires the purchaser to attend to those qualities of the article he buys, which are supposed to be within the reach of his observation and judgment. If he fails to make due examination and inquiry the maxim *caveat emptor* applies. *Misner v. Granger*, 4 Gilm. 69; 2 Kent's Comm. 478; *Humphrey v. Comline*, 8 Blackf. 516; *Fleming v. Slocum*, 18 Johns. 403; *Paul v. Hadley*, 23 Barb. 521; 3 Wait's Actions and Defences, art. 3, sec. 1, p. 458. Appellant had ample time and opportunity to make examination and inquiry. *Holden v. Dakin*, 4 Johns. 421; *Thompson v. Ashton*, 14 Johns. 316; *Hart v. Wright*, 17 Wend. 267; *Salisbury v. Stainer*, 19 Wend. 159. "Our law is that the buyer takes the risk of the quality and condition, unless he protects himself by warranty or there has been a false representation, fraudulently made by the vendor." *Lindsey v. Davis*, 30 Mo. 406; *McCurdy v. McFarland*, 10 Mo. 377. (2) The court committed no error in giving instruction number two on part of respondent, nor in refusing to give instruction "one a," asked by appellant. Where there is neither warranty, representation, artifice, or trick, mere silence on part of a vendor is never adjudged to constitute fraud, unless it is shown that the vendor had actual knowledge of the existence of a latent disease or defect in the thing sold, as distinguished from good reason to believe that such disease or defect exists. *Crawford v. Bertholf*, Saxton, 468 (cited in notes on p. 96, Kerr on Fraud and Mistake); *Jones v. Quick*, 28 Ind. 125.

BLACK, J.—This was a suit in two counts. The first declares for the contract price of one hundred head of cattle sold by the plaintiff to the defendant. The second seeks to recover the value of the same cattle. The contract price, as well as the value, is alleged to have been $3,431.25. The answer is (1) a general denial; (2) a fraudulent representation as to the health and condition of the cattle; (3) fraudulent concealment of the fact that they had Spanish or Texas fever; (4) tender of their value in their diseased condition.

Plaintiff purchased one hundred and five head of cattle at the stock yards in Kansas City on Friday, July 25, 1884, at $3.60 per hundredweight. He shipped them to Barnard on Saturday. Mr. Ray, plaintiff's agent, attended to the shipment and accompanied the cattle. Ray says it was reported in the yards, before he left Kansas City, that the cattle were sick with Texas fever; some persons said they were sick and some said they were not. When the cattle arrived at Barnard, Ray told the plaintiff of the report, and that the cattle were in bad condition; that one died in the yards at Kansas City before loading, and another died in the cars on the way. On Sunday morning the plaintiff started with them to his home. After driving them a mile or so, he says he concluded to and did drive them back to the yards, because they were wild. One of them died on this drive, and two more died in the pen at Barnard before the sale to defendant. There is much evidence tending to show that plaintiff drove the cattle back because he was afraid to take them to his neighborhood, and that he knew they were diseased, and dying from the fever. He made no disclosure of the fact that the cattle were sick to defendant, nor that they were reported to have the fever. Defendant bargained for the cattle on Sunday afternoon and on Monday

morning completed the contract at $3.75 per hundred-weight, and at once shipped them to Chicago. Thirty died on the way, and twenty were condemned by the health officer. It is shown beyond all question that they all had the Texas fever.

The court, by the first instruction given at the request of the plaintiff, told the jury, that if "plaintiff made no representations to defendant as to the health or condition of said cattle to influence defendant to believe said cattle were sound or in healthy condition, but, on the contrary, defendant bought said cattle on actual view of the same and relying on his own judgment as to their health and condition, then the jury will find for plaintiff. And if the cattle were bought by the defendant in the manner above stated, it makes no difference whether said cattle, or any of them, were, at the time of said sale, affected with Texas fever or other disease, or whether plaintiff did or did not know of their being so diseased, as, under such circumstances, he would buy at his own risk and peril."

Caveat emptor is the general rule of the common law. If defects in the property sold are patent and might be discovered by the exercise of ordinary attention, and the buyer has an opportunity to inspect the property, the law does not require the vendor to point out defects. But there are cases where it becomes the duty of the seller to point out and disclose latent defects. Parsons says the rule seems to be, that a concealment or misrepresentation as to extrinsic facts, which affect the market value of the thing sold, is not fraudulent, while the same concealment of defects in the articles themselves would be fraudulent. 2 Pars. on Cont. [6 Ed.] 775. When an article is sold for a particular purpose, the suppression of a fact by the vendor, which fact makes the article unfit for the purpose for which it was sold, is a deceit; and, as a general rule, a material latent defect must be disclosed when the article is offered for

sale, or the sale will be avoided. 1 Whart. on Cont., sec. 248. The sale of animals which the seller knows, but the purchaser does not, have a contagious disease, should be regarded as a fraud when the fact of the disease is not disclosed. Cooley on Torts, 481. Kerr says: "Defects, however, which are latent, or circumstances materially affecting the subject-matter of a sale, of which the purchaser has no means, or at least has no equal means of knowledge, must, if known to the seller, be disclosed." Kerr on Fraud & Mis. [Bump's Ed.] 101.

In *Cardwell v. McClelland*, 3 Sneed, 150, the action was for fraud in the sale of an unsound horse. The court had instructed that if the buyer relies upon his own judgment and observations, and the seller makes no representations that are untrue, or says nothing, the buyer takes the property at his own risk. This instruction was held to be erroneous, the court saying: "If the seller knows of a latent defect in the property that could not be discovered by a man of ordinary observation, he is bound to disclose it." In *Jeffrey v. Bigelow*, 13 Wend. 518, the defendants, through their agent, sold a flock of sheep to the plaintiff; soon after the sale, a disease known as the *scab* made its appearance among the sheep. It was in substance said, had the defendants made the sale in person, and known the sheep were diseased, it would have been their duty to have informed the purchaser; and the defendants were held liable for the deceit.

In the case of *McAdams v. Cates*, 24 Mo. 223, the plaintiff made an exchange or swap for a filly, unsound from loss of her teeth. The court, after a careful review of the authorities, as they then stood, announced this conclusion: "If the defect complained of in the present case was unknown to the plaintiff, and of such a character that he would not have made the exchange had he known of it, and was a latent defect such as would have ordinarily escaped the observation of men engaged in

buying horses, and the defendant, knowing this, allowed the plaintiff to exchange without communicating the defect, he was guilty of a fraudulent concealment and must answer for it accordingly." This case was followed and the principle reasserted in *Barron v. Alexander*, 27 Mo. 530. *Hill v. Balls*, 2 H. & N. 299, seems to teach a different doctrine, but the cases in this court, supported as they are, must be taken as the established law of this state.

There is no claim in this case that defendant knew these cattle were diseased. It seems to be conceded on all hands that Texas fever is a disease not easily detected, except by those having had experience with it. The cattle were sold to the defendant at a sound price. If, therefore, plaintiff knew they had the Texas fever, or any other disease materially affecting their value upon the market, and did not disclose the same to the defendant, he was guilty of a fraudulent concealment of a latent defect. It is not necessary to this defence that there should be any warranty or representations as to health or condition of the cattle. Indeed, so far as this case is concerned, if the cattle had been pronounced by some of the cattlemen to have the Texas fever, and, after knowledge of that report came to plaintiff, some of them to his knowledge died from sickness, then he should have disclosed these facts to the defendant. They were circumstances materially affecting the value of the cattle for the purposes for which they were bought, or for any other purpose, and of which defendant, on all the evidence, had no equal means of knowledge. To withhold these circumstances was a deceit, in the absence of proof that defendant possessed such information. It follows that the first instruction is radically wrong, and that the second given at the request of the plaintiff is equally vicious.

The judgment is reversed and the cause remanded. Ray, J., absent. The other judges concur.